QUINAN *v.* SCHNEIDER

[No. 487, September Term, 1966.]

*Decided June 30, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, OPPENHEIMER, BARNES, McWILLIAMS and FINAN, JJ.

*L. Robert Evans* and *Harris James George* for appellant.

*Preston A. Pairo,* with whom were *Pairo & Pairo* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

The appellant filed a bill asking for a declaration that he was not the father of an illegitimate child by the appellee, and for other and further relief. Judge Proctor sustained the mother's demurrer to the bill primarily on the ground that § 6 of the Uniform Declaratory Judgments Act (Code (1967 Repl. Vol.), Art. 31A) provides that "When, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed," and that a special form of remedy for a specific type of case had been provided by Code

312

(1966 Repl. Vol.), Art. 16, §§ 66A to 66P, codified under the subtitle Paternity Proceedings and, with § 66 included, hereinafter referred to as the Paternity Act. Appellant's secondary contention was that his complaint could be considered as a petition for relief under Code (1966 Repl. Vol.), Art. 16, § 66, considered without reference to §§ 66A-66P immediately following. Judge Proctor, finding that § 66 had been repealed and reenacted as § 1 of Ch. 722 of the Laws of 1963, the chapter which enacted the Paternity Act, and that it is an integral part of that Act, rejected the secondary contention and held, correctly we think, that the jurisdiction conferred on the equity courts by § 66 "in all cases relating to the custody, guardianship, maintenance and support of legitimate and illegitimate children" had, under the explicit words of the section, to be invoked by the "bill or petition filed by the father," so that appellant, having expressly alleged that he was not a father, could not invoke its relief.

We turn to consideration of whether declaratory relief properly was withheld. Appellant's bill alleges that the appellee had notified appellant that she had given birth to a child on May 23, 1966, and had notified him "that said child is illegitimate and that she intends to impute its paternity to [him] * * *" and that she "has threatened to bring judicial paternity proceedings against [him] in order to attempt to impose upon him the duty to support the aforementioned illegitimate child," and that he is not the father of said child.

The demurrer alleges that the Paternity Act provides "exclusive remedies to determine the paternity of illegitimate children," and that on June 15, 1966, "prior to the filing of this Bill of Complaint" the respondent had filed her complaint in the Domestic Relations Division of the Circuit Court No. 2 of Baltimore City and that the court had assumed jurisdiction, setting the petition for hearing on August 25, 1966. The mother also answered, repeating the statements as to the institution of paternity proceedings, stating that their purpose was to have the appellant adjudged to be the father of the illegitimate child and alleging that the appellant was the father of the child.

The appellant argues that while the Paternity Act may give an exclusive remedy to the mother of the illegitimate child or

to a public welfare official or other complainant on behalf of the mother or child, it does not offer any remedy to one claiming not to be the father of an illegitimate child, who desires to have that status judicially determined, since such a one may not effectively initiate a proceeding thereunder. He says that the General Assembly, by the passage of the Paternity Act did not intend that he should be required to "squat upon his haunches and await the pleasure of the Appellee, in order to discover whether or not he will be saddled with the support of the Appellee's child." He argues that there was nothing before the chancellor when he sustained the mother's demurrer without leave to amend from which there could properly be found that there was a proceeding pending against the appellant under the Paternity Act.

It is manifest that the Legislature intended the Paternity Act to occupy and control the field of disputed paternity. The General Assembly declared its conviction, in stating the purpose of the Act, that the State has a duty to ameliorate the deprived social and economic status of children born out of wedlock and that "the policies * * * relative to establishing the paternity of such children," their custody and the determination of the one to be charged with their support "are socially necessary and desirable, having as their threefold purpose:" (1) the promotion of the best interest of such children, (2) the imposition on both parents of the basic obligations of parenthood, and (3) the simplification of procedures. Full and adequate procedures are established. The complainant is represented by the State's Attorney. The court can order mother, child and the putative father to submit to blood tests. Although the procedures are in equity, the putative father can elect to have a trial by jury. He may not be required to testify and the burden of proof is on those who seek to declare him the father. If the court finds the defendant to be the father, he may be required to give bond for the support provisions decreed. Cf. *Buford v. Bunn*, 247 Md. 203, 230 A. 2d 636 (1967).

We may assume without deciding that a declaration as to whether a man is the father of an illegitimate child could properly be given if at the time it is given no action under the Paternity Act had been instituted against him. We hold that when

a putative father has been brought within the ambit and coverage of the Paternity Act by the institution of proceedings against him thereunder, that Act is a statute providing "a special form of remedy for a specific type of case" and that under § 6 of Art. 31A of the Code (1967 Repl. Vol.), the statutory remedy and not declaratory relief must be availed of. The docket entries in the case before us show that the bill for declaratory relief was filed on July 15, 1966. The "speaking demurrer," assuming it to be that as the appellant charges, and the answer both allege that the mother on June 15, 1966, had filed a petition in the domestic relations division of the Circuit Court No. 2 of Baltimore City charging the appellant with being the father of her illegitimate child, and that a hearing thereon had been set for August 25, 1966. We were told at the argument by the mother's lawyer that proof of these allegations would be furnished if the case were remanded for the taking of testimony.

The appellant's answer was to argue that in the present posture of the case those allegations had not been properly before the lower court and were not properly before this Court, but he did not deny that they were true.

In our view the case is one for the application of Maryland Rule 871 a since it appears to us that its substantial merits will not be determined by affirmance or reversal or modification of the order appealed from and that the purposes and interests of justice will be advanced by remanding the case without affirmance or reversal for the taking of testimony to show whether or not the Paternity Act has been invoked against the putative father. If such testimony is offered the chancellor should dismiss the bill and remit the putative father to the statutory procedures of the Paternity Act.

> *Case remanded without affirmance or reversal of the judgment appealed from for further proceedings not inconsistent with the opinion herein, appellant to pay the costs.*